# SEITZ VAN OGTROP & GREEN, P.A.
### ATTORNEYS AND COUNSELORS AT LAW

| | | |
|---|---|---|
| BERNARD A. VAN OGTROP | Writer's Direct Dial: (302) 888-7604 | JAMES S. GREEN, JR. |
| R. KARL HILL | Writer's E-Mail Address: jsgreen@svglaw.com | JARED T. GREEN |
| | www.svglaw.com | |

November 22, 2022

Via: CM/ECF

The Honorable Gregory B. Williams
U.S. District Court District of Delaware
Caleb Boggs Federal Building
844 N. King Street; Unit 26 Room 6124
Wilmington, DE  19801

      RE:  *Acadia Pharmaceuticals Inc. v. Aurobindo Pharma Limited, et al.*
            C.A. 1:20-cv-00985-GBW (consolidated)

           **Defendant MSN's Request to File Motion for Summary Judgment**

Dear Judge Williams:

      Defendants MSN Laboratories Pvt. Ltd. and MSN Pharmaceuticals, Inc. (hereinafter "MSN") respectfully request leave to move for summary judgment of invalidity of U.S. Patent 7,601,740 (the '740 patent). The Motion would be based on a clear-cut double patenting legal theory and involve only a single legal issue of statutory interpretation. The proposed Motion would be case dispositive for MSN. To be clear, there are no factual issues because any relevant facts are undisputed as they are either calendar dates (for which there can be no dispute) or are based on patent file history's plain text.

### A. A Case Dispositive Motion to Genericize the Pimavanserin Market

      Plaintiff Acadia Pharmaceuticals Inc. ("Acadia") has already voluntarily dismissed or stipulated to non-infringement of four of five patents asserted against MSN throughout the course of this litigation. (C.A. 20-985 D.I. 144, 176). A judgment of invalidity of the only remaining '740 patent would be case dispositive for MSN and clear the way for MSN to obtain FDA's final approval of its pimavanserin capsule ANDA product by January 2024. There is currently no

*The Honorable Gregory B. Williams*
*November 22, 2022*
*Page 2*

generic version of Acadia's Nuplazid® (pimavanserin, a Parkinson's Disease medicine) on the market, and Acadia listed a 2030 expiration date for its '740 patent on the FDA's "Orange Book" patent listing database. The Nuplazid® Orange Book page is attached as **Ex. A** hereto. It is in the public's interest to resolve the patent issues blocking the approval of affordable generic pharmaceutical products to enable an earlier launch date for them.

**B. <u>No Factual Dispute That the 2024-Expiring '271 Patent Is Commonly Owned as the '740 Patent and Claims Indistinguishable Subject Matter as the '740 Patent</u>**

To win on a double patenting defense, MSN needs to show that at least one commonly-owned and earlier-expiring patent claims the same or an obvious variant of the subject matter that the '740 patent claims. For the purposes of the proposed Motion, MSN will rely on just one such patents, U.S. Patent 9,566,271 (the '271 patent). There is no dispute that Acadia owns the '271 patent and listed the '271 patent on the Orange Book to cover Nuplazid®. (Ex. A). There is also no possible dispute that the '271 patent expires years before the '740 patent.[1] Finally, Acadia has not disputed, nor could it, that the '271 patent claims are indistinguishable from those of the '740 patent. In September, Dr. Heathcock, an expert for MSN and the other defendants in this consolidated case, served an expert report to compare the claims of the two patents in question, reaching the conclusion that they are indistinguishable. On October 28, Acadia served four rebuttal expert reports, but the only mention of the double patenting defense in those four reports is by Dr. Roth, who opined that, "I understand *from counsel* that none of Dr. Heathcock's alleged 'reference patents' are proper references to support an assertion of obvious-type double patenting." (Excerpt from redacted Dr. Roth's 10/28/2022 report, attached as **Ex. B**, at ¶ 130 (emphasis added)). Acadia has effectively conceded that the dispute on the double patenting defense is

---

[1] Acadia has applied for, and obtained, a patent term extension under 35 U.S.C. § 156 ("PTE") for the '740 patent, and the Federal Circuit has ruled that a double patenting defense cannot be based on a difference in patent expirations caused by a PTE. *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367 (Fed. Cir. 2018). However, MSN's defense is based on the undisputable fact that the '740 patent would expire more than three years later than the '271 patent *without* applying the PTE. (*See* C.A. 20-1029 D.I. 17-4 (Exhibit C to Amended Complaint, the '740 patent, at page 30 of 30, 8/25/2015 Certificate of Correction specifying a 1,249-day patent term adjustment under 35 U.S.C. § 154(b), which is commonly known as a "PTA")). To be clear, MSN will not base its double patenting defense on any portion of the PTE (35 U.S.C. § 156 extension) attached to the '740 patent.

*The Honorable Gregory B. Williams*
*November 22, 2022*
*Page 3*

purely legal in nature because its various technical experts failed to include any factual rebuttal and relied entirely on counsel's instructions. The only remaining issue is whether Acadia's attorneys' understanding of the law and their instructions to Dr. Roth were correct. If not, then MSN can properly rely on the '271 patent, which renders all asserted claims of the '740 patent invalid. This issue does not require a trial to resolve.

### C. The Only Legal Issue Is the Correct Interpretation of the Double Patenting "Safe Harbor" Statute, 35 U.S.C. § 121

The '740 patent issued from U.S. Patent Application No. 10/759,561 ("the '561 App."). (C.A. 20-1029 D.I. 17-4, at face page, field (21)). The '271 patent issues from a string of continuation patent applications tracing back to Application No. 11/416,527 ("the '527 App."), "which is a division of" the '561 App. (**Ex. C** hereto, the '271 patent, at face page, field (21), (60)). The law is specific and clear on whether a patent resulting from a divisional application can be used as a double patenting reference against a later-expiring patent issued from the original application. It can, except that 35 U.S.C. § 121 provides that "[a] patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on *an application filed as a result of such a requirement*, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is *filed before the issuance of the patent on the other application*." (Emphases added). The plain text sets out the two requirements for this safe harbor to apply, which are: (1) the mandatory restriction requirement; and (2) the divisional application must be filed, in the proper time period, as a result of the restriction requirement. In other words, the safe harbor only applies to a divisional application *filed* in a specific time period that starts with a restriction requirement—which results in the branching of the relevant patent prosecution—and the safe harbor closes at the moment a patent issues from either branch of the prosecution.

MSN will show that Acadia never filed a divisional application during any point in the safe harbor window. A timeline of the relevant events is attached as **Ex. D**. The restriction requirement during the '561 original application prosecution dates to 2007. The '527 App., in contrast, was styled as a continuation application and filed in *2006*, not "as a result of such a [restriction] requirement" as the statute requires. Then, in April 2010, Acadia's patent prosecution counsel at Jones Day LLP filed an amendment to convert the '527 App. to a divisional

*The Honorable Gregory B. Williams*
*November 22, 2022*
*Page 4*

application. Yet, by that time it was too late. The '740 patent had already issued months ago in October 2009, closing the statutory safe harbor window. Acadia's counsel never filed any divisional application during the safe harbor window, even though there was nothing preventing them from doing so.

Therefore, a single legal issue determines whether the '740 patent is invalid due to double patenting. This legal issue involves only statutory interpretation and the parsing of a public record—the file histories of the original '561 App. and the divisional '527 App. MSN submits that the resolution of this legal issue does not require any expert testimony or additional fact finding. There is no need for a trial on this issue. Furthermore, the Motion can lead to the early disposition of MSN's case and have a real-world impact beneficial to the public, regardless of whether Acadia would continue to litigate against the other defendants following a ruling on the Motion. MSN respectfully requests that the Court grant leave for a motion for summary judgment.

Counsel remains available at Your Honor's convenience should the Court have any questions or additional concerns.

    Respectfully submitted,

    /s/ *James S. Green, Jr.*

    James S. Green, Jr. (Bar No. 4406)

Encls.

JSG/arf
cc: All counsel of record (via CM/ECF).