IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACADIA PHARMACEUTICALS INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) )  C.A. No. 20-985-GBW |
| AUROBINDO PHARMA LIMITED *et al.*, | ) )  CONSOLIDATED |
| Defendants. | ) ) ) ) |

**JOINT STATEMENT OF UNDISPUTED FACTS**

Plaintiff ACADIA Pharmaceuticals Inc. ("ACADIA") and Defendants MSN Laboratories Private Ltd. and MSN Pharmaceuticals, Inc. (collectively, "MSN"), stipulate and agree to the following set of facts.

1. ACADIA holds New Drug Application No. 210793 for Nuplazid®. The active ingredient in ACADIA's Nuplazid® is a chemical compound commonly known as pimavanserin tartrate.

2. ACADIA caused U.S. Patent Nos. 7,601,740 ("the '740 patent") and 9,566,271 ("the '271 patent"), among others, to be listed in the FDA's electronic database commonly known as *Approved Drug Products with Therapeutic Equivalence Evaluations*, or the "Orange Book," available at https://www.fda.gov/Drugs/InformationOnDrugs/, as covering ACADIA's Pimavanserin Tartrate (Nuplazid®) Capsule EQ 34mg Base product.

3. A true and correct copy of the FDA's Orange Book listing of Nuplazid® capsule EQ 34mg base product, and the patent and exclusivity information pages relating to this product, is attached hereto as Exhibit 1 (JSUF0002 - 0004).

4. A true and correct copy of the '740 patent is attached hereto as Exhibit 2 (JSUF0006 - 0034).

5. A true and correct copy of the '271 patent is attached hereto as Exhibit 3 (JSUF0036 - 0061).

6. Claim 22 of the '740 patent recites as follows:

> 22. A compound having the structure of Formula (I):
>
> (I)
>
> [chemical structure of pimavanserin]
>
> or a pharmaceutically acceptable salt thereof.

(JSUF0032).

7. Claim 22 of the '740 patent shows "Formula (I)," which is the chemical structure of pimavanserin, and claims the pimavanserin compound "or a pharmaceutically acceptable salt thereof." (JSUF0032).

8. Claim 26 of the '740 patent dependents from claim 22, and recites "[a] compound of claim 22, wherein the salt is a tartrate salt." Therefore, claim 26 claims pimavanserin tartrate. (JSUF0032).

9. Claim 1 of the '271 patent recites as follows:

> 1. A method for treating hallucinations or delusions comprising administering to a patient a therapeutically effective amount of a compound of Formula (I) or a salt thereof:
>
> (I)
>
> [chemical structure of pimavanserin]

(JSUF0061).

10. Claim 1 of the '271 patent shows the same "Formula (I)" chemical structure of pimavanserin as in claim 22 of the '740 patent. Claim 1 of the '271 patent claims "[a] method for treating hallucinations or delusions comprising administering to a patient a therapeutically effective amount of" pimavanserin or a salt thereof. (JSUF0061).

11. Claim 5 of the '271 patent dependents from claim 1, and recites "[t]he method of claim 1, wherein a tartrate salt of the compound of Formula (I) is administered to the patient." Therefore, claim 5 claims using pimavanserin tartrate to treat hallucinations or delusions in a patient. (JSUF0061).

12. According to ACADIA's Orange Book listing regarding Nuplazid®, the '740 patent expires on 04/29/2030 and the '271 patent expires on 01/15/2024. The patent expiration dates listed on the Orange Book regarding ACADIA's Nuplazid® product are true and correct. (JSUF0003).

13. ACADIA is the assignee of both the '740 and the '271 patents and ACADIA currently owns both of these patents. (JSUF0006; JSUF0036).

3

14. The '740 patent lists David M. Wiener, Robert E. Davis, Mark R. Brann, Carl-Magnus A. Andersson and Allan K. Uldam as inventors. (JSUF0006).

15. The '271 patent lists David M. Wiener, Robert E. Davis, Mark R. Brann, Carl-Magnus A. Andersson and Allan K. Uldam as inventors. (JSUF0036).

16. The '740 patent issued on October 13, 2009 from Patent Application No. 10/759,561 ("the '561 Application"), filed on January 15, 2004. (JSUF0006).

17. The '740 patent is entitled to a 20-year statutory term under 35 U.S.C. §154(a)(2) that ends on January 15, 2024. The '740 patent's term was extended or adjusted under 35 U.S.C. §154(b) by 1,249 days. (JSUF0034 (August 25, 2015 Certificate of Correction)). Its expiration date after the patent term adjustment is June 17, 2027.

18. ACADIA applied for, and received, a patent term extension under 35 U.S.C. §156 for the '740 patent for the FDA's approval of Nuplazid®.

19. On August 17, 2020, ACADIA submitted the following terminal disclaimer request: "Acadia Pharmaceuticals Inc., ("Patentee"), the owner of 100 percent interest of the '740 patent, hereby <u>disclaims 269 days</u> of the terminal part of the term of the '740 patent, that is, 269 days of the patent term adjustment days under 35 U.S.C. §154(b). In making the above disclaimer, Patentee does not disclaim any part of the 20-year statutory term under 35 U.S.C. §154 (a)(2), nor the 980 days remainder of the patent term adjustment days under 35 U.S.C. §154(b), nor any additional patent term extension under 35 U.S.C. §156 that has or will be granted by the Office." (JSUF0386 - 0387 (August 17, 2020 Terminal Disclaimer)).

4

20. After both the §154(b) adjustment and the §156 extension—which total 1,315 days—the '740 patent has a current expiration date of April 29, 2030. (JSUF0003; JSUF0390 (Notice of Final Determination); JSUF0394 (Certificate Extending Patent Term)).

21. The '271 patent issued on February 14, 2017, from Patent Application No. 14/935,246 ("the '246 Application"), filed on November 6, 2015. The '246 Application traces back through a series of continuation patent applications to U.S. Patent Application No. 11/416,527 ("the '527 Application"). The '527 Application, filed on May 3, 2006, is in turn a divisional application of the '561 Application. (JSUF0036).

22. The '271 patent term was not adjusted under 35 U.S.C. §154(b) or extended under 35 U.S.C. §156. (JSUF0036). The '271 patent expires on January 15, 2024. (*Id.*; JSUF0003).

23. The '740 patent and the '271 patent both stem from the '561 Application. (JSUF0006 – 0036). They share a similar specification.

24. The shared specification of the '740 patent and the '271 patent disclose pimavanserin and its salts, including the tartrate salt, and methods of using pimavanserin and its tartrate salt to treat neurodegenerative diseases and neuropsychiatric disorders and their symptoms, including hallucinations or delusions. (*See, e.g.*, JSUF0025 (19:56 - 20:4)).

25. During the prosecution of the '561 Application, the Applicants initially presented 86 claims covering pimavanserin, its salts, and various methods of using pimavanserin. (JSUF0113 - 0120). The January 15, 2004 filing of the '561 Application including the initial set of claims is attached hereto as Exhibit 4 (JSUF0063 - 0129).

26. On July 5, 2007, the patent examiner issued an Office Action, placing the 86 pending claims into seven groups:

> "I. Claims 1-8 and 48, drawn to a composition comprising a compound of Formula(I), classified in class 514, subclass 310.
>
> II. Claims 9-31, drawn to a method for treating a neurodegenerative disease, classified in class 514, subclass 653.
>
> III. Claims 32-39, drawn to a method for treating psychosis associated with dopanergic therapy, classified in class 514, subclass 310.
>
> IV. Claims 40-47, drawn to a method for treating a neuropsychiatric disease, classified in class 514, subclass 653.
>
> V. Claims 49-83, drawn to a method of inhibiting an activity of a monoamine receptor, classified in class 514, subclass 310.
>
> VI. Claims 84-85, drawn to a method for identifying a genetic polymorphism, classified in class 435, subclass 6.
>
> VII. Claim 86, drawn to a method for identifying a subject suitable for treatment with the compound of Formula (I), classified in class 435, subclass 6."

(JSUF0133). The examiner stated that:

> Inventions I and II-V are related as product and process of use. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h). In the instant case the method of Groups II-V can be accomplished by a variety of means and compounds such as the administration of known anticholiesterase inhibitors (such as tacrine and donepezil) to inhibit neurodegeneration (especially in regards to Alzheimer's), the use of known antipsychotic agents for the treatment of psychosis (such as olanzapine and risperdine), the administration of known monoamine receptor modulators (such as monoamine oxidase inhibitors).

6

>       Inventions I and VI-VII are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the compounds of group I are not involved in the method for identifying a genetic polymorphism or for identifying a subject suitable for treatment based upon the genetic polymorphism.
>
>       Inventions II and V are directed to related processes. The related inventions are distinct if the (1) the inventions as claimed are either not capable of use together or can have a materially different design, mode of operation, function, or effect; (2) the inventions do not overlap in scope, i.e., are mutually exclusive; and (3) the inventions as claimed are not obvious variants. See MPEP § 806.05(j). In the instant case, the methods of Groups II-V can be accomplished by a variety of means and compounds such as the administration of known anticholiesterase inhibitors (such as tacrine and donepezil) to inhibit neurodegeneration (especially in regards to Alzheimer's), the use of known antipsychotic agents for the treatment of psychosis (such as olanzapine and risperdine), the administration of known monoamine receptor modulators (such as monoamine oxidase inhibitors). Furthermore, the inventions as claimed do not encompass overlapping subject matter and there is nothing of record to show them to be obvious variants.
>
>       Inventions II-V and VI-VII are unrelated. Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and§ 806.06). In the instant case, the different inventions the methods of Groups II-V can be accomplished by a variety of means and compounds such as the administration of known anticholiesterase inhibitors (such as tacrine and donepezil) to inhibit neurodegeneration (especially in regards to Alzheimer's), the use of known antipsychotic agents for the treatment of psychosis (such as olanzapine and risperdine), the administration of known monoamine receptor modulators {such as monoamine oxidase inhibitors). None of these methods and their known compounds for treatment are necessarily involved in a method for identifying a genetic polymorphism or for identifying a subject suitable for treatment based upon the genetic polymorphism.

(JSUF0133 - 0135). The examiner explained, "these inventions are independent or distinct for the reasons given above," and required restriction between product and

7

   process claims. (JSUF0135). The July 5, 2007 Office Action is attached hereto as Exhibit 5 (JSUF0131 - 0138).

27. On August 6, 2007, the Applicants responded to the July 5, 2007 Restriction Requirement, and "elect[ed] without traverse Group I, Claims 1-8 and 48." (JSUF0140). The Applicants' August 6, 2007 Response to Restriction Requirement is attached hereto as Exhibit 6 (JSUF0140).

28. Group I claims in the '561 Application were "drawn to the composition comprising a compound of Formula(I) . . . ." (JSUF0133 (July 5, 2007 Office Action at Detailed Action)). "Formula(I)" as used by the patent examiner refers to pimavanserin. No other restriction requirements issued before the July 5, 2007 Office Action during the prosecution of the '561 Application.

29. On January 10, 2008, the Applicants responded to the October 10, 2007 Office Action, amending the claims of the '561 Application to include three new claims 87-89 as follows:

> 87. (NEW) A method of treating psychosis in a patient suffering from Alzheimer's disease, comprising administering to a subject in need of such treatment a therapeutically effective amount of a compound of formula (I) or the tartrate salt thereof.
> 88. (NEW) A method of improving cognitive deficiencies caused by administration of an antipsychotic agent, comprising administering to a subject in need of such improvement a therapeutically effective amount of a compound of formula (I) or the tartrate salt thereof.
> 89. (NEW) A method of reducing hallucinations, comprising administering to a subject in need of such reduction a therapeutically effective amount of a compound of formula (I) or the tartrate salt thereof.

(JSUF0403). Applicants further stated that they "reserve the rights of rejoinder of Claims 49-86." (JSUF0404).

8

30. On July 11, 2008, the Examiner responded to the January 10, 2008 amendment, withdrawing the newly added claims 87-89 from consideration for reading on the non-elected invention. (JSUF0413).

31. On October 14, 2008, the Applicants responded to the July 11, 2008 final Office Action, submitting a Request for Continued Examination and cancelling Claims 49-89. (JSUF0428). Applicant stated, "[c]laims 49-89, directed to non-elected subject matter, have been canceled without prejudice to Applicants' right to prosecute the canceled subject matter in one or more continuation, continuation-in-part, or divisional applications." (JSUF0430).

32. The prosecution of the '561 Application continued after, resulting in the issuance of the '740 patent on October 13, 2009.

33. On May 3, 2006, the Applicants Weiner, et al. filed the '527 Application, as a "continuation" of the '561 Application. (JSUF0143). A certified copy of the '527 Application prosecution history is attached hereto as Exhibit 7 (JSUF0142 - 0384).

34. On June 1, 2009, the patent examiner responded to the May 3, 2006 application filing and issued the first official Office Action in the prosecution of the '527 App., subjecting all of the then-pending claims 1-16 of the '527 Application to a Restriction Requirement. (JSUF0298 - 0303).

35. On July 1, 2009, the Applicants responded to the June 1, 2009 Restriction Requirement and filed a "Response to Species Election Requirement and Preliminary Amendment under 37 C.F.R. § 1.115." (JSUF0305 - 0313).

36. Applicants cancelled all of claims 1-16, and presented a new set of claims 17-40. (JSUF0310).

37. Applicants stated in the "Response to Species Election Requirement and Preliminary Amendment under 37 C.F.R. § 1.115" that:

> New claims 17-40 are based on subject matter in restriction groups not elected in U.S. Patent Application Nos. 10/759,561 and 11/416,855 . . . .
>
> The subject matter of new claims 17-19 is also within group IV (claims 40-47) of the Restriction Requirement dated July 5, 2007 in the '561 application. For example, at the time of the Restriction Requirement, claim 45 of the '561 application was drawn to a method of treatment of neuropsychiatric disease using the same compound of the instant claims. Claim 43 of the '561 application recited schizophrenia as one of the neuropsychiatric diseases to be treated. Applicants submit that, because the present amendment to the claims is drawn to subject matter deemed to be a single invention by the Office, the amendment is in compliance with 37 C.F.R. § 1.121, and will not interfere with the preparation of a first Office Action on the merits under 37 C.F.R. § 1.104. Upon entry of the instant amendment, applicants will amend the claim of priority such that the instant application will be a divisional of the '561 application.
>
> Applicants may add new claims prior to an action on the merits, and such added claims are considered original claims for the purposes of an election. *See* Manual of Patent Examining Procedure, Eighth Edition, Rev. No. 6 ("MPEP") § 818 ("Election becomes fixed when the claims in an application have received an action *on their merits* by the Office.") (emphasis added). No action on the merits has take place in the instant application, as only a Species Election Requirement is pending. Therefore, the instant amendment to the claims may properly be considered the invention elected. *See* MPEP at§ 818.02(a) ("Where claims to another invention are properly added and entered in the application before an action is given, they are treated as original claims for purposes of restriction only. The claims originally presented and acted upon by the Office *on their merits* determine the invention elected.... ") (emphasis added).

    (JSUF0311 - 0312).

38. On January 26, 2010, the examiner responded to the July 1, 2009 amendment, allowing the new set of claims 17-40 in the '527 App. (JSUF0319 - 0327). In her reason for

10

|    |    |
|----|----|
|    | allowance, the examiner acknowledged that the June 1, 2009 Restriction Requirement was now "moot." (JSUF0324). |
| 39. | On April 13, 2010, the Applicants filed an "Amendment after Allowance under 37 C.F.R. § 1.312," and made a change in the relevant portion of the specification from "continuation" to "divisional" of the '561 Application. (JSUF0357 - 0359). |
| 40. | On the same day, April 13, 2010, the Applicants filed a continuation application of the '527 App., No. 12/759,662, which, over a few years, gave rise to a string of continuation applications, ultimately leading to the issuance of the '271 patent. (JSUF0036). |
| 41. | On April 21, 2010, the examiner responded to the April 13, 2010 amendment, entering the amendment as directed to matters of form not affecting the scope of the invention. (JSUF0361). |
| 42. | Pursuant to the stipulation filed by the parties (D.I. 256), ACADIA asserts claim 26 of the '740 patent against MSN. |
| 43. | MSN has elected to rely on a single patent, the '271 patent, as the reference patent for its obviousness-type double patenting defense and counterclaim against the patent claim ACADIA asserts against MSN. |
| 44. | Claim 26 of the '740 patent claims the pimavanserin tartrate compound. Claim 5 of the '271 patent claims a method for treating hallucinations or delusions comprising administering to a patient a therapeutically effective amount of pimavanserin tartrate. |
| 45. | Claim 26 of the '740 patent and claim 5 of the '271 patent both reference pimavanserin tartrate. |

Dated: April 28, 2023

| | |
|---|---|
| SAUL EWING LLP | SEITZ, VAN OGTROP & GREEN, P.A. |
| */s/Michelle C. Streifthau-Livizos* | */s/ James S. Green, Jr.* |
| James D. Taylor, Jr. (#4009) | James S. Green, Jr. (#4406) |
| Jessica M. Jones (#6246) | 222 Delaware Avenue, Suite 1500 |
| Michelle C. Streifthau-Livizos (#6584) | Wilmington, DE 19801 |
| 1201 N. Market Street, Suite 2300 | (302) 888-7607 |
| P.O. Box 1266 | jsgreen@svglaw.com |
| Wilmington, Delaware 19899 | |
| (302) 421-6800 | OF COUNSEL: |
| james.taylor@saul.com | |
| jessica.jones@saul.com | Shashank D. Upadhye |
| michelle.streifthau-livizos@saul.com | Yixin H. Tang |
| | Brent A. Batzer |
| | UPADHYE CWIK LLP |
| OF COUNSEL: | 109 Symonds Drive, Unit 174 |
| | Hinsdale, IL 60522-0174 |
| Chad J. Peterman | shashank@ipfdalaw.com |
| Bruce M. Wexler | yixin@ipfdalaw.com |
| Scott F. Peachman | brent@ipfdalaw.com |
| Rebecca A. Hilgar | |
| Felix A. Eyzaguirre | |
| PAUL HASTINGS LLP | *Attorneys for Defendants MSN Laboratories Private Ltd. and MSN Pharmaceuticals, Inc.* |
| 200 Park Avenue | |
| New York, New York 10166 | |
| (212) 318-6000 | |
| chadpeterman@paulhastings.com | |
| brucewexler@paulhastings.com | |
| scottpeachman@paulhastings.com | |
| rebeccahilgar@paulhastings.com | |
| felixeyzaguirre@paulhastings.com | |
| | |
| *Attorneys for Plaintiff ACADIA Pharmaceuticals Inc.* | |