**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

_____
                                                          )
ACADIA PHARMACEUTICALS INC.,              )
                                                          )
                              Plaintiff,                  )
                                                          )
                    v.                                    )
                                                          )
AUROBINDO PHARMA LIMITED and              )        C.A. No. 1:20-cv-00985-GBW
AUROBINDO PHARMA USA, INC., et            )
al.                                                       )         (Consolidated)
                                                          )
                              Defendants.                 )
                                                          )
                                                          )
                                                          )
_____

**MSN'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT
NO. 7,601,740 FOR DOUBLE PATENTING**

Dated: May 12, 2023

SEITZ, VAN OGTROP & GREEN, P.A.
James S. Green, Jr. (DE 4406)
222 Delaware Avenue, Suite 1500
Wilmington, DE  19801

and

UPADHYE TANG LLP
Shashank Upadhye (*pro hac vice*)
Yixin Tang (*pro hac vice*)
Brent Batzer (*pro hac vice*)
109 Symonds Drive, #174
Hinsdale, IL 60522

*Attorneys for MSN*

# TABLE OF CONTENTS

I.   PROCEDURAL HISTORY ........................................................................................ 1

II.  SUMMARY OF ARGUMENT ................................................................................. 1

III. SUMMARY OF UNDISPUTED FACTS ................................................................ 3

IV. ARGUMENT ........................................................................................................... 5

    A. Legal Standards ................................................................................................. 5

        1.  Standard for Summary Judgment ............................................................. 5

        2.  Three and Only Three Statutory Bases for Patent Terms .......................... 5

        3.  Obviousness-Type Double Patenting ("OTDP") ...................................... 6

        4.  Terminal Disclaimer as a Remedy for OTDP ........................................... 7

        5.  Divisional Application and the 35 U.S.C. § 121 Safe Harbor ................... 8

    B. The '271 Patent Is a Proper OTDP Reference Patent to Invalidate Claim 26 of the '740
       Patent ............................................................................................................... 9

        1.  The '740 and the '271 Patents Are Commonly Owned and Share Inventors, and the
            '271 Patent Would Expire Several Years Earlier than the '740 Patent without
            Counting the 35 U.S.C. § 156 PTE ........................................................... 9

        2.  There Is No Dispute between Acadia and MSN That the Asserted Claim 26 of the
            '740 Patent Claims an Obvious Variant of the Invention Covered by Claim 5 of the
            '271 Patent ................................................................................................. 9

        3.  The 35 U.S.C. § 121 Safe Harbor Cannot Protect the '740 Patent Because No Patent
            Application Was Filed within the Statutory Time Window That Could Have
            Triggered the Safe Harbor Provision for the '271 Patent and the '740 Patent .............. 9

    C. The Safe Harbor Statute Mandates the Operation of OTDP When a Parent Application
       and a Divisional Application Resulted in Patents with Similar Claim Scope but Different
       Expiration Dates due to a PTA ......................................................................... 13

        1.  The OTDP Doctrine Is Recognized by Statutes .................................... 13

        2.  All Patent Terms Grants Are Based on Statutes, and any Operation of OTDP Perforce
            Cuts off Some Statutorily-Conferred Patent Term ................................... 15

        3.  In the Post-URAA Statutory Scheme That Has Been in Effect for Twenty-Eight

Years, the § 121 Safe Harbor Provision Is Specifically Addressing OTDP Caused by PTA, and Nothing Else ............................................................................................... 16

4.   The OTDP Doctrine Protects the Patent System, and It Applies without Any Case-Specific "Gamesmanship" Inquiry ...................................................................................... 18

V.   CONCLUSION ............................................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AbbVie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*, 764 F. 3d 1366 (Fed. Cir. 2014) ................................................................................................. 6, 7, 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 5

*Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340 (Fed. Cir. 2010).... 7, 8, 9

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................. 15

*Eli Lilly & Co. v. Barr Labs. Inc.*, 251 F.3d 955 (Fed. Cir. 2001).............................................. 7

*G.D. Searle LLC v. Lupin Pharms., Inc.*, 790 F.3d 1349 (Fed. Cir. 2015).............................. 9, 12

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 2002 WL 34166829 (E.D. Va. Apr. 22, 2002), *aff'd*, 349 F.3d 1373 (Fed. Cir. 2003) ................................................................................. 7, 9

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003) .................. 9, 12

*Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*, 916 F.2d 683 (Fed. Cir. 1990) ....................... 10

*Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014)................................. 5, 6

*In re Braithwaite*, 379 F.2d 594 (C.C.P.A. 1967)........................................................................ 7

*In re Janssen Biotech, Inc.*, 880 F.3d 1315 (Fed. Cir. 2018).................................................. 8, 12

*In re Schneller*, 397 F.2d 350 (C.C.P.A. 1968) ........................................................................ 13

*In re Van Ornum*, 686 F.2d 937 (C.C.P.A. 1982)................................................................... 7, 14

*Kimble v. Marvel Ent., LLC*, 576 U.S. 446 (2015) ...................................................................... 6

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2015 WL 11430786 (W.D. Mich. Dec. 10, 2015)........................................................................................................................... 16

*Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367 (Fed. Cir. 2018)......................................... 17

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F. 3d 1355 (Fed. Cir. 2018).............. 7

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353 (Fed. Cir. 2008) ................................... 16

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842 (Fed. Cir. 2008) .................. 15

*Singer Mfg. Co., v. June Mfg. Co.*, 163 U.S. 169 (1896)............................................................. 6

iv

*Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed. Cir. 1991)................................ 10

**Constitutional Provisions**

U.S Const., art. I, § 8.................................................................................................. 6

**Statutes**

35 U.S.C. § 101 ........................................................................................................... 15

35 U.S.C. § 121 .................................................................................................. 2, 8, 10, 11

35 U.S.C. § 154 ....................................................................................................... 2, 5, 15

35 U.S.C. § 156 ...................................................................................................... 1, 2, 3, 6

35 U.S.C. § 253 .............................................................................................................. 7

35 U.S.C. § 261 ............................................................................................................ 15

Pub. L. 103-465, Title V, § 532(a)(1), Dec. 8, 1994, 108 Stat. 4809, 4983 .................................. 5

Pub. L. 112-29, §§ 4(a)(2), 20(j)(1), Sept. 16, 2011, 125 Stat. 295, 335.................................... 14

Pub. L. 82-593, 66 Stat. 792 (the Patent Act of 1952)......................................................... 7, 8, 14

**Other Authorities**

150 Cong. Rec. S7521 (June 25, 2004) .......................................................................... 15

MPEP § 201.06 ........................................................................................................... 16

**Rules**

FED. R. CIV. P. 56 ...................................................................................................... 5

**Regulations**

37 C.F.R. § 1.78 ........................................................................................................ 12

This motion is case-dispositive and straightforward because it is squarely a statutory interpretation question of law based on a stipulated set of facts. The Parties narrowed this lawsuit to just one patent claim. The undisputed facts compel a ruling that, under the doctrine of obviousness-type double patenting ("OTDP"), the asserted claim is invalid because it is not patentably distinct from the claim of an earlier-expiring reference patent.

## I.  PROCEDURAL HISTORY

MSN Laboratories Pvt. Ltd. and MSN Pharmaceuticals, Inc. (collectively, "MSN") is now the only defendant seeking a judgment on the merits, and the only patent left in dispute in this case is U.S. Patent 7,601,740 ("the '740 patent"). MSN filed its Abbreviated New Drug Application ("ANDA") for a generic version of the Parkinson's Disease drug Nuplazid®. The FDA tentatively approved MSN's ANDA. Acadia Pharmaceuticals Inc. ("Acadia") asserted five patents against MSN in this consolidated case, but has voluntarily dismissed or stipulated to non-infringement of four of the five patents. (D.I. 144, 176). Acadia also resolved its disputes with the other defendants by stipulating to dismissal or reaching an agreement to be bound by the outcome of its case against MSN. (D.I. 87, 236, 253, 254). Acadia and MSN have narrowed the dispute to just the invalidity of one claim (claim 26) of the '740 patent based on OTDP, and stipulated to a set of undisputed facts to support a summary judgment on this issue. (D.I. 256, 257, 258).

## II.  SUMMARY OF ARGUMENT

MSN asserts that U.S. Patent No. 9,566,271 ("the '271 patent") is a proper reference that forms the basis of OTDP invalidity against claim 26 of the '740 patent. When two commonly owned patents with different patent expiration dates (and the difference is not exclusively due to a 35 U.S.C. § 156 patent term extension or "PTE") cover "obvious variants" of the same invention, the challenged, later-expiring patent (here, the '740 patent) is invalid under the OTDP doctrine

1

over the earlier-expiring reference patent. Courts have followed the OTDP doctrine continuously for more than a century. Congress, too, repeatedly recognized OTDP, and incorporated and shaped the doctrine in statutes. When a challenged patent and a reference patent trace back to a common patent application, and a Patent Examiner imposed a restriction requirement on that original application leading to a subsequent filing of a "divisional" application, the challenged patent can enjoy a "safe harbor" protection from the application of OTDP if two precise statutory requirements are met. 35 U.S.C. § 121 (2002, 2011 (current)). The statute expressly states that the safe harbor can only apply if (1) the divisional application is "filed as a result of" the restriction requirement; *and* (2) the divisional application is filed before the issuance of a patent from the original application. *Id.*

In the instant case, OTDP applies because the two patents are commonly owned and claim obvious variants of the same invention as a matter of law. The asserted '740 patent claim 26 covers pimavanserin tartrate salt, and claim 5 of the '271 patent covers using this salt to treat patients. Due to a 35 U.S.C. § 154(b) patent term adjustment or "PTA" of 980 days (to be clear, this is not a § 156 PTE), the '740 patent would expire several years after the '271 patent.

The '271 patent is a divisional of the '740 patent. However, the § 121 safe harbor does not protect the '740 patent from MSN's OTDP challenge, because neither of the § 121 statutory requirements was met. Acadia never filed any divisional application within the safe harbor window that started with a 2007 restriction requirement but closed when the '740 patent issued in 2009. Under this set of undisputed facts, the '271 patent must qualify as an OTDP reference against the '740 patent, and, due to the '740 patent claim 26's indistinguishable claim scope over claim 5 of the '271 patent, the '271 patent renders claim 26 of the '740 patent invalid for double patenting.

### III.   <u>SUMMARY OF UNDISPUTED FACTS</u>

The facts are not in dispute for this Motion. (D.I. 258, Joint Statement of Undisputed Facts).[1] Acadia owns both the challenged '740 patent and the reference '271 patent, and the patents share the same set of inventors. (JSUF ¶¶ 13-15; *compare* JSUF Ex. 2 at 0006, field (73), (75) *with* JSUF Ex. 3 at 0036, field (73), (72)). Claim 26 of the '740 patent claims pimavanserin tartrate salt. (JSUF ¶¶ 6-8, 44; JSUF Ex. 2 at 0032). Claim 5 of the '271 patent claims using pimavanserin tartrate to treat hallucination or delusion in a patient. (JSUF ¶ 11, 44; JSUF Ex. 3 at 0061). Both of these claims "reference pimavanserin tartrate." (JSUF ¶ 45).

The '740 patent issued from U.S. Patent Application No. 10/759,561 ("the '561 Application"). (JSUF ¶ 16; JSUF Ex. 2 at 0006, field (21)). The '271 patent issued from a string of continuation applications tracing back to U.S. Patent Application No. 11/416,527 ("the '527 Application"), which is a *divisional* application of the '561 Application. (JSUF ¶ 21; JSUF Ex. 3 at 0036, field (21), (60)). Both patents claim the benefit of the filing of the same '561 Application, filed on January 15, 2004. (JSUF ¶¶ 16, 21, 23). Therefore, both patents are entitled to the same 20-year statutory term under 35 U.S.C. § 154(a)(2) that would end on January 15, 2024. (JSUF ¶¶ 17, 22). However, the '740 patent expires years after the '271 patent due to the former receiving a lengthy PTA.[2] (JSUF ¶¶ 17, 19-22). The 980-day PTA pushed out the '740 patent's expiry to

---

[1] In this brief, the paragraphs of the Joint Statement of Undisputed Facts, D.I. 258, are cited as "JSUF ¶ __" and the Bates-numbered JSUF exhibits are cited with their exhibit and Bates numbers, as "JSUF Ex. _ at 0___." The Bates-number ranges of the JSUF exhibits are shown in Exhibit 4 to the Declaration of Brent Batzer, Esq., to be filed concurrently with this brief.

[2] The '740 patent also received a patent term extension or "PTE" under 35 U.S.C. §156, which, when added on top of the 980-day PTA, extends the expiration date of the '740 patent to April 29, 2030. (JSUF ¶¶ 18-20; JSUF Ex. 1 at 0003; JSUF Ex. 9 at 0390). To be clear, MSN's Motion is based on the difference in patent terms attributable to the operation of the PTA, but not any part attributable to the PTE, on the '740 patent.

3

September 22, 2026. (JSUF Ex. 8 at 0386-87). The '271 patent does not have a PTA and it is still set to expire on January 15, 2024. (JSUF ¶ 22; JSUF Ex. 1 at 0003).

Acadia filed the '561 Application on January 15, 2004 and voluntarily filed the '527 Application on May 3, 2006 as a "continuation" of the '561 Application. (JSUF ¶¶ 16, 25, 33; JSUF Ex. 4 (all pages); JSUF Ex. 7 at 0143). On July 5, 2007, more than a year *after* the filing of the '527 Application, the Examiner issued a restriction requirement on the parent '561 Application. (JSUF ¶ 26; JSUF Ex. 5 (all pages)). Acadia responded by electing a subset of claims to pursue in the '561 Application. (JSUF ¶¶ 27-29; JSUF Ex. 6 at 0140). The '561 Application issued as the '740 patent on October 13, 2009. (JSUF ¶ 32).

Meanwhile, Acadia prosecuted the May 2006-filed '527 Application as a continuation of the '561 Application. (JSUF Ex. 7 at 0143, 0146, 0223, 0227). On June 1, 2009, the Examiner issued a restriction requirement against all of then-pending claims 1-16 of the '527 Application. (JSUF ¶ 34; JSUF Ex. 7 at 0298-303). Rather than electing a set of claims as the Examiner required, Acadia cancelled claims 1-16, and presented a new set of claims 17-40 on July 1, 2009. (JSUF ¶¶ 35-36; JSUF Ex. 7 at 0310-11). Acadia argued to the Examiner that claims 17-40 corresponded to a reserved group of claims in the '561 Application, and stated an intention to change the '527 Application to a divisional of the original '561 Application. (JSUF ¶ 37; JSUF Ex. 7 at 0311-12). On January 26, 2010, the Examiner allowed the new claims 17-40 in the '527 Application, and stated that the 2009 restriction requirement on the '527 Application was rendered "moot" by the cancellation of claims 1-16. (JSUF ¶ 38; JSUF Ex. 7 at 0324). On April 13, 2010, Acadia amended the '527 patent specification, changing the application from a "continuation" to "a divisional" of the '561 Application. (JSUF ¶ 39; JSUF Ex. 7 at 0357-59). This change occurred precisely six months after the '740 patent had already issued from the original '561 Application. On that same

4

day, April 13, 2010, the Applicants filed a continuation application (Serial No. 12/759,662) of the '527 Application, which gave rise to a string of continuation applications, ultimately leading to the issuance of the '271 patent. (JSUF ¶ 40; JSUF Ex. 3 at 0036, field (60)).

The relevant patent prosecution timeline is plotted and shown as Exhibit 1 to the Declaration of Brent A. Batzer, Esq. The timeline shows the § 121 statutory "safe harbor" window starting at the July 5, 2007 restriction requirement in the '561 Application and closing at the issuance of the '740 patent on October 13, 2009.

## IV. ARGUMENT

### A. Legal Standards

#### 1. Standard for Summary Judgment

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

#### 2. Three and Only Three Statutory Bases for Patent Terms

After the implementation of the Uruguay Round Agreements Act ("URAA"), a U.S. patent issued on an application filed on or after June 8, 1995 has a patent term that "end[s] 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications …, from the date on which the earliest such application was filed." 35 U.S.C. § 154(a)(2), as amended by Pub. L. 103-465, Title V, § 532(a)(1), Dec. 8, 1994, 108 Stat. 4809, 4983; *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1215 (Fed. Cir. 2014). The 20-year patent term can be lengthened for "1 day for each day after the end of the period specified in clause [(i)-(iv) for patent office delays]." 35 U.S.C. § 154(b)(1)(A) (commonly referred to as "patent term adjustment" or "PTA"). In addition and separately from a PTA, the term of a patent within certain categories relating to an FDA-

approved pharmaceutical product can be extended under 35 U.S.C. § 156 to compensate for FDA delays. This is commonly referred to as "patent term extension" or "PTE." There are no other statutory provisions or judicially-created mechanisms to grant or extend a patent term.

### 3.     Obviousness-Type Double Patenting ("OTDP")

A patent confers exclusive rights only "for limited Times." U.S Const., art. I, § 8; *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 451 (2015) ("Patents endow their holder with superpowers, but only for a limited time."). Once a patent expires, the public is entitled to free use of the invention described in the patent—this is the grand bargain of the entire patent scheme. *Singer Mfg. Co., v. June Mfg. Co.*, 163 U.S. 169, 185 (1896); *Kimble*, 576 U.S. at 451; *Gilead*, 753 F.3d at 1212.

The "judicially created" OTDP doctrine has served since the 1800's to prohibit different expiries for two commonly owned patents (or two patents sharing an inventor) that claim obvious variants of the same invention. *Gilead*, 753 F.3d at 1212-1214 (discussing OTDP history). Post-URAA, "the doctrine of obviousness-type double patenting continues to apply where two patents that claim the same invention have different expiration dates." *AbbVie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*, 764 F. 3d 1366, 1374 (Fed. Cir. 2014). "The ban on double patenting ensures that the public gets the benefit of the invention after the original period of monopoly expires." *Id.* at 1373. "Permitting any earlier expiring patent to serve as a double patenting reference for a patent subject to the URAA guarantees a stable benchmark that preserves the public's right to use the invention (and its obvious variants) that are claimed in a patent when that patent expires." *Gilead*, 753 F.3d at 1210.

OTDP "is designed to prevent an inventor from securing a second, later expiring patent for the same invention." *AbbVie*, 764 F. 3d at 1373. OTDP was created "to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is

6

brought about." *Eli Lilly & Co. v. Barr Labs. Inc.*, 251 F.3d 955, 967-68 (Fed. Cir. 2001). For two patents that are both post-URAA (*i.e.* issued on post-1995 applications, as in the instant case), "it is the comparison of [the] patent expiration dates that should control, not merely the issuance dates." *Gilead*, 753 F.3d at 1210.

"A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim." *Eli Lilly*, 251 F.3d at 968; *AbbVie*, 764 F.3d at 1374. For a double patenting inquiry, a compound claim is deemed at least obvious in view of a method-of-use claim for that compound. *See Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1345 (Fed. Cir. 2010). A challenged patent claiming a "solid pharmaceutically acceptable salt" and a reference patent claiming a method of using this salt in humans present "no distinguishing differences." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 2002 WL 34166829 at \*3-4 (E.D. Va. Apr. 22, 2002), *aff'd*, 349 F.3d 1373 (Fed. Cir. 2003).

### 4.      Terminal Disclaimer as a Remedy for OTDP

Beginning in 1952, an owner of two differently-expiring but similar patents can file a "terminal disclaimer" "to create one expiration date for their term of exclusivity over the inventions and variants, which is tantamount for all practical purposes to having all the claims in one patent." *In re Van Ornum*, 686 F.2d 937, 948 (C.C.P.A. 1982) (Rich, J.) (quoting *In re Braithwaite*, 379 F.2d 594, 601 (C.C.P.A. 1967)); 35 U.S.C. § 253(b); Pub. L. 82-593, 66 Stat. 792, 809 (the Patent Act of 1952); *Boehringer*, 592 F.3d at 1346 (§ 253 provides a remedy for OTDP). The terminal disclaimer statutory provision *specifically* addresses OTDP, not statutory double patenting. *In re Van Ornum*, 686 F.2d at 942 ("35 U.S.C. § 101 precluded two patents for the same invention, wherefor a terminal disclaimer could be of no help.").

### 5.    Divisional Application and the 35 U.S.C. § 121 Safe Harbor

For a parent application and its divisional application claiming overlapping patented subject matters, a "safe harbor" was established to protect them from OTDP, provided that a divisional application is "filed as a result of" a restriction requirement and "filed before the issuance of the patent on the other application." 35 U.S.C. § 121; Pub. L. No. 82-593, 66 Stat. at 800-01 (1952).  Section 121 states,

> If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on *an application filed as a result of such a requirement*, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is *filed before the issuance of the patent on the other application*. The validity of a patent shall not be questioned for failure of the Director to require the application to be restricted to one invention.

(Emphases added).

Accordingly, there is a statutory window between a restriction requirement and a relevant patent issuance, beyond which "the patent owner could not take advantage of the safe-harbor provision simply by designating [a non-divisional application] as a divisional application … years after the fact." *In re Janssen Biotech, Inc.*, 880 F.3d 1315, 1322 (Fed. Cir. 2018); *G.D. Searle LLC v. Lupin Pharms., Inc.*, 790 F.3d 1349, 1354-55 (Fed. Cir. 2015) (retroactive designation of a [non-divisional application] as a divisional does not trigger safe harbor protection). These requirements, i.e. (1) a restriction requirement by the patent office must serve as the cause for the filing of a divisional application; and (2) the divisional application must be filed before the issuance of a patent from the original application, are strictly applied. *In re Janssen*, 880 F.3d at 1322 ("this court follows 'a strict application of the plain language of § 121.'"); *Boehringer*, 592 F.3d at 1352

("the 'as a result of' requirement must be satisfied"); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1382 (Fed. Cir. 2003) ("a strict test for application of § 121").

**B.      The '271 Patent Is a Proper OTDP Reference Patent to Invalidate Claim 26 of the '740 Patent**

**1.      The '740 and the '271 Patents Are Commonly Owned and Share Inventors, and the '271 Patent Would Expire Several Years Earlier than the '740 Patent without Counting the 35 U.S.C. § 156 PTE**

The parties stipulated that Acadia owns both the '740 patent and the '271 patent.  (JSUF ¶ 13). The two patents also share the same set of inventors. (JSUF ¶¶ 14-15). Due to a 980-day PTA, the '740 patent would expire years after the '271 patent does. (JSUF ¶¶ 17, 19-22).

**2.      There Is No Dispute between Acadia and MSN That the Asserted Claim 26 of the '740 Patent Claims an Obvious Variant of the Invention Covered by Claim 5 of the '271 Patent**

Acadia and MSN stipulated that claim 26 of the '740 patent claims pimavanserin tartrate salt, whereas claim 5 of the '271 patent claims using pimavanserin tartrate to treat hallucinations or delusions in a patient. (JSUF ¶¶ 6-11, 44-45). Claim 26 of the '740 patent would have been obvious over claim 5 of the '271 patent. *See Boehringer*, 592 F.3d at 1345 (a method of use claim for a chemical compound would render the compound claim obvious, in an OTDP context); *Geneva*, 2002 WL 34166829 at *3-4, *aff'd* 349 F.3d 1373 (a salt claim and a claim for a method of using the salt in humans present "no distinguishing differences" for an OTDP analysis). If the '271 patent is a proper reference patent for OTDP against the '740 patent, the asserted claim 26 of the '740 patent is invalid for OTDP.

**3.      The 35 U.S.C. § 121 Safe Harbor Cannot Protect the '740 Patent Because No Patent Application Was Filed within the Statutory Time Window That Could Have Triggered the Safe Harbor Provision for the '271 Patent and the '740 Patent**

The Section 121 safe harbor is designed to protect a patent applicant who had filed an application containing claims covering "distinct and independent" inventions and was then

9

*required* by the patent examiner to file multiple applications to cover these inventions for prosecution. It is important to note that the "distinct and independent inventions" subject to a restriction requirement and amendable to separate examinations can nevertheless be obvious variants of the same invention—otherwise there would be no need for the § 121 safe harbor. Once a restriction *requirement* was issued, the applicant may continue prosecuting the original application with a subset of the claims, and file one or more new, "divisional," applications to cover the rest of the scope of the applicant's invention. If the applicant obtains multiple patents covering very similar subject matters at the end of the branched patent prosecution, the resulting patents are placed in a safe harbor and cannot be used as reference patents against each other for the operation of OTDP, provided that the specific statutory requirements are met. 35 U.S.C. § 121.

In the instant case, neither of the two statutory safe harbor requirements was met. **First,** there was never *any* application filing "as a result of a restriction requirement," which § 121 expressly requires. The '527 Application that led to the '271 patent[3] was voluntarily filed as a continuation application in May 2006, more than one year *before* the first restriction requirement was placed on the original '561 Application. (JSUF ¶¶ 25-26, 33; JSUF Ex. 5 at 0131-32; JSUF Ex. 7 at 0142-44). The May 2006-filed application could not have been filed *as a result of* the July 2007 restriction requirement. The filing of the '527 Application in 2006 was not forced upon the

---

[3] The '271 patent issued from a string of seven continuation applications that trace back to the '527 Application. (JSUF Ex. 3 at 0036, field (60)). The prosecution of continuation applications of a divisional application is considered part of the prosecution of the divisional application, for the purpose of applying OTDP. *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1579 (Fed. Cir. 1991) (a patent issued from a continuation of a divisional application was subject to § 121 safe harbor analysis); *Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*, 916 F.2d 683, 684 (Fed. Cir. 1990) (a patent issued from a continuation application is nevertheless subject to OTDP and § 121 safe harbor analysis in relation to a patent issued from the original parent application). Of course, if the "divisional" does not receive § 121 safe harbor treatment, continuations from that divisional do not either.

applicants by any restriction requirement.

There was never any other application filing in the prosecution history of the '527 Application that could possibly trigger the safe harbor provision. While Acadia stated an intention to change the status of the '527 Application in its July 1, 2009 Response, that statement of future intent was not a *filing of an application* required by § 121. (JSUF ¶¶ 35-36). It was a voluntary maneuver and not a direct response to any restriction requirement. Acadia could have directly responded to a restriction requirement by (1) electing a subset of claims as the Examiner delineated in that restriction requirement, to continue prosecution in the application that is subject to the restriction (i.e. the '561 Application for the 2007 restriction requirement, or the '527 Application for the 2009 restriction requirement); and/or (2) filing a new divisional application that responds to the restriction requirement. Acadia did neither. Instead, Acadia cancelled all pending claims 1-16 (which rendered the 2009 restriction requirement "moot" according to the Examiner) and added new claims to the existing '527 Application. (JSUF ¶¶ 36-38; JSUF Ex. 7 at 0310-12; *id.* at 0324). This maneuver of cancelling and adding claims, plus any statement of a future intent, is still not any filing of an application within the meaning of 35 U.S.C. § 121.

It is worth noting that the 2009 restriction requirement on the '527 Application cannot serve as a basis for invoking the § 121 safe harbor anyway, because it did not lead to any branching of patent prosecution pathways to generate what we could term as the "safe-harbor patent application set." Such a set of applications would have included "an application with respect to which a requirement for restriction … has been made" (which would be the '527 Application) with a corresponding "application filed as a result of such a requirement" (which does not exist, because no divisional application from the '527 Application was ever filed).

In the '527 Application, Acadia filed an amendment in 2010 changing the status of the '527

Application from a continuation of the parent '561 Application to a divisional. (JSUF ¶ 39). This amendment in an Office Action Response is still not a *filing* of a divisional application as required by § 121. Acadia had more than two years, from the July 2007 restriction requirement on the original '561 Application to the October 2009 issuance of the '740 patent, to file a divisional application responsive to the 2007 restriction requirement, but they did not do so.  They took an alternative pathway and maneuvered themselves out of the safe harbor.

**Second**, Acadia's timing of its actions also dooms the '740 patent. Even if Acadia could treat its "change of status" amendment as a divisional application filing "as a result of" the 2007 restriction requirement, which is impermissible,[4] Acadia's amendment came too late anyway to trigger the safe harbor. The "patent on the other application," i.e. the '740 patent, had issued six months before Acadia's "change of status" amendment on the '527 Application. "Amending an application to change its relationship to a prior-filed application—for example, from a CIP to a divisional—is expressly permitted."  *In re Janssen*, 880 F.3d at 1324 (citing to 37 C.F.R. § 1.78(d)(2) (2015)). However, such an amendment outside of the safe harbor window (i.e. after the issuance of the challenged patent) does not, and cannot, trigger the safe harbor protection against OTDP. *Id.* at 1322-23 ("once the [challenged patent issued], the [] patent was barred from safe-harbor protections.").

Acadia's patent prosecution counsel (in the July 1, 2009 Response) was fully aware of the difference between a continuation application and a divisional. (JSUF ¶ 37). Acadia could have taken advantage of the safe harbor statute. However, Acadia chose not to, or did it the wrong way,

---

[4] The § 121 text never gave any effect to amending the status of a *pre-restriction* patent application. The statute refers to the filing of a divisional application consequent to a restriction requirement. Section 121 is subject to "a strict application," and a retroactive designation of a non-divisional application as a divisional application is not treated as a "filing" to trigger § 121 protection. *In re Janssen*, 880 F.3d at 1322; *G.D. Searle*, 790 F.3d at 1354.

and it compounded its own mistake by waiting too long. Nothing prevented Acadia from following the express and unambiguous procedure laid out in § 121 and filing a divisional application months or even years *before* the issuance of the '740 patent. Acadia did not do so. Now, OTDP must apply because Acadia ended up in a double patenting situation that was "entirely of [its] own making." *In re Schneller*, 397 F.2d 350, 355 (C.C.P.A. 1968).

The dispositive, and undisputed, fact is that there was simply no "filing" of a divisional application (or any application) in the statutory safe harbor window. Any patent that resulted from the '527 divisional application—including the '271 patent—is well outside of the § 121 safe harbor. Therefore, the '271 patent is properly a reference against the '740 patent. Because these commonly owned patents have different expiration dates, and because the earlier-expiring claim 5 of the reference '271 patent and the challenged, later-expiring claim 26 of the '740 patent cover obvious variants of the same invention, claim 26 of the '740 patent is invalid for double patenting.

**C.    The Safe Harbor Statute Mandates the Operation of OTDP When a Parent Application and a Divisional Application Resulted in Patents with Similar Claim Scope but Different Expiration Dates due to a PTA**

No further analysis is necessary for invalidating claim 26 of the '740 patent. Acadia may argue that the OTDP doctrine is "judge made" and cannot cut off a statutory-conferred patent term. Acadia may also argue that it would not be "equitable" to apply OTDP in this case. Neither argument can change the express statutory law, which compels invalidation of claim 26 of the '740 patent, the sole remaining claim in dispute. MSN briefly addresses the first argument in sections 1-3 below, and the second argument in section 4, and reserves the right to respond further.

**1.    The OTDP Doctrine Is Recognized by Statutes**

OTDP is not just a "judge-made doctrine." It has been recognized, addressed, and shaped, by statutes. First, Congress enacted § 121 in 1952, when the OTDP doctrine had already been well

established, then amended the section in 2011, and kept the two statutory requirements exactly the same. Pub. L. No. 82-593, July 19, 2952, 66 Stat. at 800-01; Pub. L. 112-29, Sept. 16, 2011, 125 Stat. 284, 295. By enacting and amending § 121, Congress repeatedly addressed and authorized the OTDP doctrine, at least in a parent application-divisional application context.

The text of § 121 refers to a patent being "used as a reference … in the courts against [another patent]," which means a double patenting challenge. But which type of double patenting is § 121 addressing? The whole reason for a restriction requirement is that the claims in the original patent application covered "independent and distinct inventions" but the Examiner imposes a separation of claims into different patent applications. The resulting divisional application cannot have identical claims as those that remain in the original application after a restriction and election. Because the application branching contemplated by § 121 necessarily leads to different claims in different patent applications (and the patents issued from them), the § 121 safe harbor cannot be addressing a § 101 statutory double patenting situation which involves *identical claims* in two patents. Therefore, the § 121 safe harbor carves out an exception to the operation of OTDP, which proves the existence of the OTDP rule, and the recognition and authorization of OTDP by Congress.

Second, a long-standing remedy for OTDP, but not for statutory double patenting, is codified as 35 U.S.C. § 253, which was also first enacted in 1952. Pub. L. 82-593, July 19, 1952, 66 Stat. at 809; *In re Van Ornum*, 686 F.2d at 942 (a terminal disclaimer "could be of no help" to a § 101 statutory double patenting situation). A terminal disclaimer serves to unite two patents that would have expired at different times, so that the earlier expiration of the two would control for both. *Id.* at 948. In other words, § 253 is also an OTDP statute—it only addresses OTDP.

Third, the PTA statute recognizes the effect of a terminal disclaimer, and by extension, the

effect of OTDP. If a § 253 terminal disclaimer was filed before a PTA was granted to the patent, the disclaimer precludes any future PTA on that patent "beyond the expiration date specified in the disclaimer." 35 U.S.C. § 154(b)(2)(B). Therefore, a statutory remedy for OTDP (and OTDP only) can, if earlier in time, *preclude*, or "cut off," any PTA.

Congress is presumed to legislate against the backdrop of existing law. *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008). In fact, Congress was fully aware of the OTDP doctrine when enacting patent statutes. For example, as one of the architects of the Hatch-Waxman Act, Senator Orrin Hatch, stated in 2004 in support of the CREATE Act, "[t]he double patenting doctrine exists as a matter of public policy to prevent a multiplicity of patents claiming patentably indistinct inventions from becoming separately owned and enforced." 150 Cong. Rec. S7521 (June 25, 2004). "All that is required for double patenting to arise is that one or more claims in each of the involved patents is determined to represent double patenting under established principles of law." *Id.*

### 2. All Patent Terms Grants Are Based on Statutes, and any Operation of OTDP Perforce Cuts off Some Statutorily-Conferred Patent Term

It would make absolutely no sense to say that the operation of OTDP is not allowed to "cut off" statutorily-conferred patent terms. Such "cutting off" is indeed what OTDP was designed to do. All patent rights are based in the patent statutes. 35 U.S.C. § 101 (patent grant is "subject to the conditions and requirements of this title"); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) (any property-like rights attached to a patent are "[s]ubject to the provisions of this title") (quoting 35 U.S.C. § 261). In fact, all U.S. patent terms grants are based on statutes, and for more than twenty-eight years, they are based on the post-URAA 35 U.S.C. § 154(a)(2) (a 20-year term), § 154(b) (PTA), § 156 (PTE), and nothing else. Therefore, for OTDP to have any meaning, it must operate to cut off some statutorily-conferred patent terms.

Regarding PTA, the Federal Circuit pointed out that "[p]atents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO," which are subject to the OTDP analysis. *AbbVie*, 764 F.3d at 1373 (citing to 35 U.S.C. § 154(b) (PTA)). "Examination delays at the PTO" is the basis for PTA, and not for the 20-year default patent term or any PTE. In *AbbVie*, the Federal Circuit noted that the challenged U.S. Patent No. 7,846,442, which issued from a post-URAA application, had an expiration date of Aug. 21, 2018 based on a priority date of August 1, 1996. *Id.* at 1369 (expiration date), 1370 (priority date)). This means that the '442 patent had a post-URAA § 154(a) 20-year term calculated from its Aug. 1, 1996 priority date, plus 750 days of 35 U.S.C. § 154(b) PTA. (*See* the '442 patent, attached as Exhibit 2 to the Batzer Declaration, at face page, field (*) (PTA, 750 days), field (63) (priority data)). The Federal Circuit affirmed the OTDP invalidation of the '442 patent, thereby extinguishing the part of its 20-year § 154(a)(2) patent term that extended beyond the 2012 expiry of the reference patent, along with all of its 750-day § 154(b) PTA. *Id.* at 1381.

At least one federal district court has held that OTDP operates to cut off extra patent term due to a PTA. *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2015 WL 11430786 (W.D. Mich. Dec. 10, 2015) (challenged patent and reference patent from the same family with the difference in expiry caused by a 418-day PTA on the challenged patent).

### 3.    In the Post-URAA Statutory Scheme That Has Been in Effect for Twenty-Eight Years, the § 121 Safe Harbor Provision Is Specifically Addressing OTDP Caused by PTA, and Nothing Else

A divisional patent application is defined as "[a] later application for an independent or distinct invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1362 (Fed. Cir. 2008) (quoting MPEP § 201.06 (2006)). A divisional application

necessarily "contains a specific reference" to the parent application, and, therefore, 35 U.S.C. § 154(a)(2) confers the same 20-year patent term to a patent issuing from a divisional application and a patent issuing from the parent application, because they by definition have the same effective filing date. A difference in patent terms arising in a parent application-divisional application situation cannot be caused by the default 20-year terms under the post-URAA patent law in effect since 1995.

The Federal Circuit has held that a § 156 PTE to compensate for a pharmaceutical product's FDA regulatory approval period cannot serve as the basis of an OTDP challenge. *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367 (Fed. Cir. 2018). This holding is the current law. Therefore, any difference in patent terms caused by a § 156 PTE grant is exempt from the operation of the OTDP doctrine.

As discussed in Part IV.C.1, above, the § 121 safe harbor addresses OTDP specifically. The safe harbor statute acts to protect from OTDP certain related patents with different expiries. Out of the three bases for patent terms that could cause different expiries in two related patents, § 121 can only address the PTA. Section 121 cannot address 35 U.S.C. § 154(a), which gives the same 20-year term to a divisional patent and its parent. Section 121 cannot address the § 156 PTE, because PTE has been placed outside of the power of OTDP and needs no additional protection. Therefore, § 121 can only be addressing the § 154(b) PTA. For the § 121 safe harbor statute to have any practical meaning post-URAA, it must address the situation that, due to differences in PTA grants which are left unresolved by any terminal disclaimer, one branch of the divided patent prosecution resulted in a patent with a later expiration date than a patent from the other branch. If this Court rules that OTDP cannot operate to cut off a PTA patent term grant, then § 121 would be left with no function. Such a ruling would effectively abrogate 35 U.S.C. § 121 and it would be an

erroneous extension of judicial power.

> **4.    The OTDP Doctrine Protects the Patent System, and It Applies without Any Case-Specific "Gamesmanship" Inquiry**

The OTDP doctrine is rooted in the U.S. Constitution and the patent statute's prohibition of double patenting. U.S. Const., art. I, § 8; 35 U.S.C. § 101; *AbbVie*, 764 F.3d at 1372 (OTDP "is grounded in the text of the Patent Act"). A patentee is entitled to receive one patent, with its full term, but not a second patent claiming an obvious variant with a longer patent term that would prevent the public from using the claimed subject matter in the earlier-expiring patent after that patent's expiration. It would be unjust and unfair to allow a patentee to engage in double patenting not because the patent owner or inventor committed any "inequitable conduct"—if they had, the patent statute provides mechanisms to render the patent unenforceable. The unfairness comes from a deviation from the "grand bargain" that is the foundation for patent monopoly to even exist.

Accordingly, as long as the patentee "was not forced into his present situation [in which OTDP applies to invalidate one of his patents]," the patent invalidation would be "entirely of his own making." *In re Schneller*, 397 F.2d at 355. Section 121 exists to protect an applicant who has done the right thing at the right time after being *required* by the Examiner to file separate applications. On the other hand, if an applicant files multiple applications voluntarily, without being first required by the Examiner or without meeting the § 121 requirements, the applicant may obtain differently expiring patents covering obvious variants of the same invention, but these patents would not be protected by the § 121 safe harbor. Filing multiple applications burdens the patent office, and is likely to result in some patent office delay. Empirical data show that more than 50% of the patents issued between 2005 and 2017 received PTAs, with approximately 80% of the patents issued in 2011 receiving PTAs. (*See* Exhibit 3 to the Batzer Declaration, Dennis Crouch, *Patent Term Adjustment Statistics*, Patently-O (Nov. 20, 2016)). Without a strict

enforcement of OTDP according to established case law and the § 121 statute, a patent applicant could engage in a perpetual continuation and divisional application filing process, and hope that a later-filed application covering the same invention as an earlier-filed one (which had issued as a patent) could receive a lengthy PTA, effectively extending the life of the earlier patent, and in the process surprise and stymie the public who expected to be able to use the claimed subject matter after the expiration of the earlier patent that had not received a PTA. The default rule, therefore, is that an invention results in one patent—and if multiple patents issue to cover obvious variants of the same invention, a terminal disclaimer under § 253 could "unite" them—and the patent term after such "unification" would be the *shortest* term among all these patents.

As discussed above in Part IV.B.3, Acadia could have enjoyed a safe harbor simply by filing a divisional application within the statutory safe harbor window, which was between the time of the July 2007 restriction requirement and the issuance of the '740 patent in October 2009. Acadia had more than two years to follow the precise rules set forth in § 121, but it failed to do so. Acadia now finds itself in a situation of its own making, but it still has not tried to fix the problem by filing a terminal disclaimer on the '740 patent to bring its expiry in line with the '271 patent.[5]

## V.    **CONCLUSION**

For these reasons, claim 26 of the '740 patent is invalid. MSN respectfully requests that the Court grant its Motion, enter a judgment in MSN's favor, dismiss the case with prejudice

---

[5] After the Federal Circuit issued its *Novartis v. Ezra* decision exempting PTE from OTDP, Acadia disclaimed 269 of the 1,249 days of PTA-generated patent term on the '740 patent in 2020. (JSUF Ex. 8 at 0386-87). The effect of this partial disclaimer was to maximize the duration of a 35 U.S.C. § 156 PTE Acadia was about to receive for the '740 patent. (JSUF Ex. 9 at 0389-91) (PTE limited by statute to April 29, 2030, with two days of the 1,317-day PTE term extending beyond the statutory limit and disregarded). Without the disclaimer, the PTE would have still only reached April 29, 2030 due to the 35 U.S.C. 156(c)(3) statutory limit that was set at 14 years after the April 29, 2016 FDA approval date for Nuplazid®, but in which case 271 days of the 1,317-day PTE term would have extended beyond the limit and been disregarded.

against Acadia, and award costs to MSN.

Dated: May 12, 2023

**SEITZ, VAN OGTROP & GREEN, P.A.**

*/s/ James S. Green, Jr.*

_____
James S. Green, Jr. (DE 4406)
222 Delaware Avenue, Suite 1500
Wilmington, DE  19801
302.888.7607
jsgreen@svglaw.com

Shashank Upadhye (*pro hac vice*)
Yixin Tang (*pro hac vice*)
Brent Batzer (*pro hac vice*)
**UPADHYE TANG LLP**
109 Symonds Drive, #174
Hinsdale, IL 60522
312.598.2610
shashank@ipfdalaw.com
yixin@ipfdalaw.com
brent@ipfdalaw.com

*Attorneys for MSN*