# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACADIA PHARMACEUTICALS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 20-985-GBW |
| AUROBINDO PHARMA LIMITED *et al.*, | ) ) | CONSOLIDATED |
| Defendants. | ) ) ) ) | |

**ACADIA'S SUR-REPLY IN OPPOSITION TO MSN'S
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
<u>OF U.S. PATENT NO. 7,601,740 FOR DOUBLE PATENTING</u>**

**TABLE OF CONTENTS**

|           |                                                                                                                         | Page |
|-----------|-------------------------------------------------------------------------------------------------------------------------|------|
| I.        | SAFE HARBOR PROTECTS THE '740 PATENT FROM OTDP .................................                                        | 1    |
|           | A. The '527 Divisional Application Meets the Requirements of § 121 .....................                                | 1    |
|           |    i. The '527 Application Was Filed "As A Result Of" a Restriction Requirement ............................................................................................... | 2 |
|           |       1. § 121 Protects Patentees From Administrative Requirements ............................................................................... | 2 |
|           |       2. MSN Fails to Distinguish *Union Carbide* and *Boehringer* ........... | 3 |
|           |       3. MSN's Form and Procedure Argument Is Meritless ..................... | 6 |
|           | B. Safe Harbor Applies Under Acadia's and MSN's Views of § 121........................ | 7 |
| II.       | OTDP CANNOT BE BASED ON PTA IN THIS CASE.................................................... | 8 |
| III.      | CONCLUSION................................................................................................................ | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
    764 F.3d 1374 (Fed. Cir. 2014) .................................................................................... 8, 10

*Amgen, Inc. v. Sandoz Inc.*,
    No. 18-11026 (MAS) (DEA), 2021 WL 5366800 (D.N.J. Sept. 20, 2021) ...................... 9, 10

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
    98 F.3d 1563 (Fed. Cir. 1996) .............................................................................................. 2

*Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*,
    592 F.3d 1340 (Fed. Cir. 2010) .................................................................................. *passim*

*Bristol–Myers Squibb Co. v. Pharmachemie B.V.*,
    361 F.3d 1343 (Fed. Cir. 2004) .............................................................................................. 4

*Eli Lilly & Co. v. Barr Lab'ys, Inc.*,
    251 F.3d 955 (Fed. Cir. 2001) .............................................................................................. 8

*G.D. Searle LLC v. Lupin Pharms., Inc.*,
    790 F.3d 1349 (Fed. Cir. 2015) ............................................................................................ 5

*In re Janssen Biotech, Inc.*,
    880 F.3d 1315 (Fed. Cir. 2018) ............................................................................................ 7

*Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*,
    533 F. Supp. 3d 170 (D.N.J. 2021) .................................................................................. 9, 10

*Novartis AG v. Ezra Ventures LLC*,
    909 F.3d 1367 (Fed. Cir. 2018) ...................................................................................... 9, 10

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    518 F.3d 1353 (Fed. Cir. 2008) ............................................................................................ 4

*St. Jude Med., Inc. v. Access Closure, Inc.*,
    729 F.3d 1369 (Fed. Cir. 2013) ........................................................................................ 2, 3

*Union Carbide Corp. v. Dow Chem. Co.*,
    619 F. Supp. 1036 (D. Del. 1985) ............................................................................... *passim*

**Statutes**

35 U.S.C. § 121 ............................................................................................................... *passim*

**Rules**

37 C.F.R. § 1.78(d)(2) (2015) ................................................................................................. 8

MSN's motion should be denied because the '740 patent is protected against the '271 patent by Safe Harbor under 35 U.S.C. § 121. In addition, case law and the equities dictate that OTDP cannot be used to cut off the '740 patent's PTA. Per the parties' agreement to use summary judgment in lieu of trial (D.I. 256), denial of MSN's motion should be accompanied by entry of judgment of infringement by MSN and no invalidity of claim 26 of the '740 patent.

I. **SAFE HARBOR PROTECTS THE '740 PATENT FROM OTDP**

    A. **The '527 Divisional Application Meets the Requirements of § 121**

MSN's Reply Brief focuses on the '527 divisional application. Indeed, it presents the operative issue as follows: "In this case, the issue is whether a patent that resulted from the '527 Application, which is a divisional application, can serve as a reference patent for OTDP against the 'original' '740 patent." (MSN Reply, D.I. 263, at 4). The answer is no. As detailed in Acadia's Answering Brief in Opposition ("Acadia Op." or "Acadia's Opposition," D.I. 261) at 9-13 and below, patents resulting from the '527 divisional application (which include the '271 patent) cannot be used as an OTDP reference because they fall within the Safe Harbor.

MSN alleges that there are two requirements that must be met for the '527 application to be removed as a reference patent: (1) "§ 121 requires that the '527 Application—the divisional application in this case—be 'filed as a result of . . . a [restriction] requirement'" and (2) the '527 divisional application must have been filed before the '740 patent issued. (MSN Reply at 4-5). MSN argues that requirement (1) is not met because the "filing [of the '527 Application] predated the restriction requirement." (*Id.* at 4, 6-9). MSN does not dispute that requirement (2) is met because the '527 application was filed before the '740 patent issued. (*Id.* at 5). Indeed, the PTO accorded the '527 divisional application a filing date of May 3, 2006. (Acadia Op. at 12). Thus, if MSN's requirement (1) is met, which it is, Safe Harbor applies under MSN's view of § 121.

1

i. **The '527 Application Was Filed "As A Result Of" a Restriction Requirement**

MSN's simplistic view is that the '527 application cannot be "filed as a result of" the 2007 restriction requirement because it was filed before the restriction requirement was entered. (MSN Reply at 6). While this position may have some facial appeal, MSN offers no case law support for its position. This is not surprising as MSN's position is directly contrary to case law. (Acadia Op. at 9-11 (discussing *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036 (D. Del. 1985) and *Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1350 (Fed. Cir. 2010)). These and other cases have made clear the purpose of § 121 and the evidentiary showing needed to invoke Safe Harbor.

1. **§ 121 Protects Patentees From Administrative Requirements**

The Federal Circuit has held that the overarching purpose of § 121 is to prevent the PTO's use of restriction requirements, which it employs for administrative convenience during prosecution, from prejudicing patentees:

> [W]hen the existence of multiple patents is due to the administrative requirements imposed by the [PTO], 35 U.S.C. § 121 provides that ***the inventor shall not be prejudiced by having complied with those requirements***. Thus when two or more patents result from a PTO restriction requirement, whereby aspects of the original application must be divided into separate applications, § 121 insulates the ensuing patents from the charge of double patenting . . . ***Section 121, viewed overall, assures that the technicalities of restriction practice are not elevated from their purpose of examination convenience*** to a potential taint on the validity of the ensuing patents.

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1568 (Fed. Cir. 1996) (emphases added); *see Boehringer*, 592 F.3d at 1352 ("The safe harbor is provided to protect an applicant from losing rights when an application is *divided*.").

It is ironic that MSN misunderstands both Acadia and *St. Jude Medical*, when it states "[i]n our case, there were no 'difficulties created by restriction requirements' in 2006, when the '527 Application was filed." (MSN Reply at 7 (citing *St. Jude Med., Inc. v. Access Closure, Inc.*,

2

729 F.3d 1369, 1376-77 (Fed. Cir. 2013)).  Here, MSN's motion seeks to invalidate the '740 patent for OTDP based on its descendant, which was only filed because of the restriction requirement in the '561 application.  MSN's motion is the very "difficulty" that "patentees could be faced with" and that "the safe harbor was created to preclude."  *See St. Jude Med.*, 729 F.3d at 1376-77 (explaining that "the safe harbor provision arose from difficulties . . . patentees ***could be faced with*** . . . in which the PTO and courts caused the two doctrines [of restriction requirements and OTDP] to collide") (emphasis added).

### 2. MSN Fails to Distinguish *Union Carbide* and *Boehringer*

MSN asserts that "Acadia did not file any patent application 'as a result of' the 2007 restriction requirement," while failing to substantively rebut the case law, cited by Acadia, explaining § 121's "as a result of" requirement or how it should apply in this case.  (MSN Reply at 6).  *Union Carbide* and *Boehringer* fully support Acadia's position.

MSN's attempt to distinguish *Union Carbide* from the present case is particularly flawed, as it ignores binding case law holding that the "as a result of" requirement applies to both the challenged and reference patents.  MSN argues that the *Union Carbide* court relied on a mistaken premise, stating "[t]he text of § 121 actually does not require the *challenged patent* to be filed 'as a result of a restrict requirement,' and therefore, "[t]he district court's discussion in *Union Carbide* . . . is based on an expansive reading of the 'as a result of' requirement on the *challenged patent*, which is not even an issue in our case."  (MSN Reply at 8).

MSN is wrong.  In *Boehringer*, the Federal Circuit endorsed the *Union Carbide* court's reading, finding that "the 'as a result of' requirement must be satisfied by both the [reference] patent and the [challenged] patent."  *Boehringer*, 592 F.3d at 1352.  In fact, "[the Federal Circuit has] repeatedly held that the 'as a result of' requirement applies to the challenged patent as well as the reference patent."  *Id.* at 1352-53; *see St. Jude Med.*, 729 F.3d at 1377 (holding "[t]he

3

requirement for consonance applies to both the patent challenged for double patenting (the challenged patent) and the patent being used as a reference against the challenged patent (the reference patent)"); *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 518 F.3d 1353, 1360 (Fed. Cir. 2008); *Bristol–Myers Squibb Co. v. Pharmachemie B.V.*, 361 F.3d 1343, 1347-48 (Fed. Cir. 2004) ("As section 121 has been interpreted by this court, [the patentee] is entitled to invoke the statutory prohibition against the use of the [reference] patent 'as a reference' against the divisional application that resulted in the [challenged] patent only if the divisional application was filed as a result of a restriction requirement and is consonant with that restriction requirement"). In its Opening Brief, MSN quoted this precise holding from *Boehringer*, but had shortened it to "the 'as a result of' requirement must be satisfied." (MSN Br. at 8-9). As such, it is surprising that MSN now ignores this precedent in an attempt to distinguish *Union Carbide*.

Federal Circuit case law therefore makes clear that the "as a result of" requirement applies equally to both the reference and challenged patents. In other words, the prerequisites needed for a reference patent to meet the "as a result of" requirement likewise apply to a challenged patent, and vice versa. MSN does not cite to any case law supporting its attempted differentiation between the court's application of the "as a result of" requirement to reference versus challenged patents. *Union Carbide* is consistent with Federal Circuit precedent, and found that the "as a result of" requirement was met when a second-filed application was filed before the entrance of the relevant restriction requirement in the first-filed, original application, but later amended to comport with the restriction requirement prior to the issuance of a patent on said second-filed application. *Union Carbide*, 619 F. Supp. at 1059-60.

The Court should similarly find that the '527 application meets the "as a result of" requirement, because in light of *Union Carbide*, MSN has already conceded that it does. MSN

4

argues "Acadia could have filed a divisional application for those claims that it eventually chose to add to the '527 Application in 2009. This way, the safe harbor could apply in litigation to protect the '740 patent from the new divisional application (which was never filed)." (MSN Reply at 7)[1]. MSN has admitted that but-for MSN's fabricated "new divisional application requirement," the Safe Harbor would apply to protect the '740 patent from the '527 application and its progeny. *Union Carbide* clearly holds that MSN's "new divisional application" requirement is illusory:

> Where, as here, the claims of an application are amended in toto to reflect the division of a copending application, I conclude that the amended application is one 'filed as a result of such a requirement' as set forth in section 121. No practical distinction exists between an application filed for the first time as a result of a restriction requirement, and an application which is amended in full to comport with that requirement.

*Union Carbide*, 619 F. Supp. at 1059-60. As a result, MSN has abrogated its own challenge.

MSN's critique of Acadia's reliance on *Boehringer* is similarly meritless. MSN argues that "[a]n applicant does have 'the choice of how to prosecute non-elected inventions following a restriction requirement,' but if an applicant chose *not* to follow the procedure set forth in the Safe Harbor Statute, it cannot then invoke the safe harbor in litigation when its patent is challenged under OTDP." (MSN Reply at 8). MSN fails to address the finding in *Boehringer* that the "as a result of" requirement is met simply when (1) "[t]he [descendant] application was due to the administrative requirements imposed by the [PTO], in the sense that, absent the restriction requirement, the applicant could have retained in the [original application] the claims prosecuted in the [descendant] application," and (2) consonance is maintained. *Id.* at 1353 n.3, 1353-54; *see G.D. Searle LLC v. Lupin Pharms., Inc.*, 790 F.3d 1349, 1357 (Fed. Cir. 2015) (holding the "as a

---

[1] Acadia did not file a new divisional, but instead (1) cancelled all of the pending claims in the '527 application, (2) added new claims to the '527 application, which Acadia identified to the PTO as being directed to the July 5, 2007 restriction requirement, and (3) amended the specification of the '527 application to be a divisional. (Acadia Op. at 4).

5

result of" requirement is satisfied, "so long as (1) the claims prosecuted in two or more applications share common lineage in the divisional chain [i.e., the two patents are derived from the same restriction requirement]; and (2) the lines of demarcation drawn by the examiner are preserved as between applications"). Stated differently, *Boehringer* found that "[s]ection 121 is not concerned with . . . how any such applications are filed. To prevent loss of the safe harbor in dividing out claims to non-elected inventions, what is required is consonance with the restriction requirement." *Boehringer*, 592 F.3d at 1353-54. There is no dispute that the amended claims in the '527 application could not have been included in the original '561 application after Acadia made its election following the restriction requirement, and that consonance was maintained. The '527 application meets all of the requirements of *Boehringer*.

MSN weakly concludes that "[n]either *Union Carbide* nor *Boehringer* dealt with a situation, as here, that the reference patent in an OTDP analysis stemmed from a *pre-restriction* divisional application." (MSN Reply at 9). But this alleged distinction is legally insignificant. *Union Carbide* dealt with a challenged patent in an OTDP analysis, which stemmed from a pre-restriction continuation-in-part application. *Boehringer* dealt with a challenged, second divisional patent in an OTDP analysis, which stemmed from a first divisional application and was filed after a patent had issued on the original application. The analysis for the "as a result of" requirement is identical for challenged and reference patents, therefore these cases provide binding legal precedent for how § 121 and its "as a result of" requirement should be applied in this case. MSN's alleged requirements for Safe Harbor are met by the '527 application.

### 3. MSN's Form and Procedure Argument Is Meritless

MSN also argues that "[f]or patent prosecution, form and procedure do matter, because the prosecution history informs the public as to the temporal scope of patent protection." (MSN Reply at 7). However, MSN does not specify what this means, cite to case law, or provide how

this statement should affect an applicant's right to amend pending claims or the relationship to a prior-filed application. Indeed, MSN has not pointed to a single instance in which courts interpret the "as a result of" requirement as setting forth a specific procedural path that an applicant must follow to take shelter in the Safe Harbor Statute, while Acadia has provided plenty of cases supporting its position.

"Amending an application to change its relationship to a prior-filed application—for example, from a CIP to a divisional—is expressly permitted." *In re Janssen Biotech, Inc.*, 880 F.3d 1315, 1324 (Fed. Cir. 2018) (citing to 37 C.F.R. § 1.78(d)(2) (2015)). Here, Acadia amended a continuation application into a divisional. The Examiner entered Acadia's amendment as directed to matters of form not affecting the scope of the invention, thus informing the public that the '527 application was a divisional with a filing date of May 3, 2006. (JSUF ¶¶ 39 & 41). Nothing that Acadia did here runs counter to the public notice function of prosecution history.

For all of the reasons stated above and in Acadia's Opposition at 9-13, the '527 application meets the requirements for Safe Harbor as interpreted by MSN.

### B.   Safe Harbor Applies Under Acadia's and MSN's Views of § 121

Acadia and MSN offer different views of the scope of Safe Harbor, but here the requirements for Safe Harbor are met under either view. Acadia still maintains its positions expressed in its Opposition at 4-9[2], but has focused this sur-reply on key admissions by MSN

---

[2] In summary, MSN misinterprets § 121 in connection with a challenge to an original patent—the reference patent application merely needs to meet the "as a result of" requirement, it does not need to be a divisional nor does it need to be filed before the original patent issues. (Acadia Op. at 4-9). MSN admits that claim 26 of the '740 patent would be entitled to Safe Harbor against claim 5 of the '271 patent, but alleges that Acadia lost this benefit by not following "proper" procedure. (*See* MSN Reply at 7 (alleging Acadia needed to file a new divisional application after the 2007 restriction requirement). This admission recognizes (1) that claim 5 of the '271 patent could not have been included in the '740 patent following both the 2007 restriction

concerning the '527 divisional application that further prove Safe Harbor applies even under MSN's narrower view of § 121.

## II. OTDP CANNOT BE BASED ON PTA IN THIS CASE

As addressed in Acadia's Opposition at 2, 13-20, an additional independent basis for rejecting OTDP here is that the judicially-created doctrine cannot cut short PTA.  OTDP prohibits "***unjustified*** timewise extension[s] of the right to exclude granted by a patent." *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) (emphasis added).  In contrast to the factual scenarios in the cases relied on by MSN, (*see, e.g.*, *Gilead*, *AbbVie*), the timewise extension at issue here was justified through PTA and presents no opportunity for gamesmanship or other concerns sought to be prevented by OTDP.

MSN asserts "Acadia does not dispute that the Federal Circuit in *Abbvie* properly applied OTDP to the challenged patent and wiped out part of the 20-year patent term as well as the 750-day PTA granted to the challenged, and ultimately invalidated, patent in the process."  (MSN Reply at 9-10).  Acadia has explained that *AbbVie* is inapposite—this holding did not reach the question applicable here, which is whether a later-filed, later-issued patent could be used as an invalidating OTDP reference to cut short the term of an earlier-filed, earlier-issued patent that expired later solely due to a statutory PTA.  (Acadia Op. at 17).  *Abbvie* made clear that the *Gilead* rationale applied, whereby the availability of OTDP must take into account the potential for applicant gamesmanship.  *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014) (OTDP should remain viable "where, as here, the

---

requirement and Acadia's subsequent election to prosecute the Group I invention in the '561 application, and (2) that consonance has been maintained in the '740 and '271 patents.  These are the Federal Circuit's two prongs of the "as a result of" requirement, needed for Safe Harbor to prohibit a reference patent's use against the original.  Acadia Op. at 4-9 (citing *Boehringer*, 592 F.3d at 1353 n.3, 1353-54).

8

applicant chooses to file separate applications for overlapping subject matter and to claim different priority dates for the applications"). As Acadia has established, no such gamesmanship occurred here.

*Ezra* and its progeny are applicable here. In *Ezra*, the Federal Circuit held that the "judge-made doctrine" of OTDP cannot "cut off a statutorily-authorized time extension" (a PTE), explaining that "the traditional concern with [OTDP] is absent." *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1374-75 (Fed. Cir. 2018). The only post-*Ezra* district court cases to address the applicability of OTDP to PTA have determined that PTA, like PTE, must be shielded from OTDP. (Acadia Op. at 15-16 (discussing *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, 533 F. Supp. 3d 170 (D.N.J. 2021); *Amgen, Inc. v. Sandoz Inc.*, No. 18-11026 (MAS) (DEA), 2021 WL 5366800 (D.N.J. Sept. 20, 2021)). In its Reply, MSN does not even mention these two cases, let alone rebut or distinguish their applicability here. That is because it cannot—this precedent is clear and applicable to this case. (*See* Acadia Op. at 14-16).

MSN also unsurprisingly provided no response to the fact that the PTA statute unambiguously enumerates only three reasons why PTA may be denied or shortened. (*See* Acadia Op. at 18 for these limited enumerations). PTA is thus a mandatory compensation for delays caused solely by the PTO (as long as not double-counted), alterable *only* for this specifically enumerated list of actions, or failures to act, on the part of applicants. MSN has provided no reason why OTDP, which is premised on actions taken by a patentee and is ***not*** included in the list of enumerated actions that can alter a mandatory PTA, should take away this mandatory statutory compensation for the '740 patent.

MSN asserts that "Acadia has no response to MSN's argument that *all* patent terms are statutorily assigned, and OTDP must cut off some statutorily assigned patent terms." (MSN

9

Reply at 9). MSN's argument is illogical. The Federal Circuit's decision in *Ezra* specifically precludes OTDP from cutting off statutorily-mandated PTEs that are added to patent terms, and MSN provides no reason why the same should not be true of statutorily-mandated PTAs, which are also added to patent terms. MSN also again argues that "§ 121 would be left with no function if OTDP cannot cut off PTA terms." (MSN Reply at 10). This is not true, as § 121 would still serve the same purpose for which it was enacted in 1952, "to prevent a patentee who divides a [pre-URAA] application in which a restriction requirement has been made from risking invalidity due to double patenting." *Boehringer*, 592 F.3d at 1352. As explained in Acadia's Opposition, courts have the power to decide when this judge-made, ***equitable*** doctrine is applicable. Moreover, as explained in Acadia's Opposition, and not disputed by MSN, the role of OTDP has gradually reduced over time. (Acadia Op. at 19-20 (citing *Abbvie*, 764 F.3d at 1373-74; *Boehringer*, 592 F.3d at 1346)). PTEs have been "placed outside of the power of OTDP" by *Ezra*, and the *Mitsubishi Tanabe* and *Amgen* courts have done the same with PTA. These decisions on PTE and PTA do not abrogate the purpose of § 121, but instead reflect the appropriate upholding of congressional intent to provide protection of statutorily-mandated PTA. MSN now attempts to take away that statutory grant for the '740 patent using the judge-made OTDP doctrine—an outcome that is inequitable and contrary to applicable law.

### III. CONCLUSION

For the reasons above and as discussed in Acadia's Opposition, MSN's Motion for Summary Judgement should be denied and Acadia's Cross Motion for Summary Judgement that claim 26 of the '740 patent is valid and literally infringed by MSN should be granted.

Dated: June 28, 2023

OF COUNSEL:

Chad J. Peterman
Bruce M. Wexler
Scott F. Peachman
Rebecca A. Hilgar
Felix A. Eyzaguirre
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000
chadpeterman@paulhastings.com
brucewexler@paulhastings.com
scottpeachman@paulhastings.com
rebeccahilgar@paulhastings.com
felixeyzaguirre@paulhastings.com

**SAUL EWING LLP**

/s/ Michelle C. Streifthau-Livizos
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, Delaware 19899
(302) 421-6800
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

*Attorneys for Plaintiff*
*ACADIA Pharmaceuticals Inc.*

11